IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MILLERS MUTUAL FIRE INSURANCE
COMPANY OF TEXAS, a foreign corporation,

    Plaintiff,

vs.                                                No. CIV 99-499 MV/RLP

SOUTHWEST SURVEYING COMPANY, INC.,
SOUTHWEST LAND DEVELOPMENT
CORPORATION, BUENA VISTA LAND
DEVELOPMENT CORPORATION, AND
FRANK E. WILSON, individually,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment or Partial Summary Judgment and Stay of Proceedings, filed November 5, 1999 [Doc. No. 12], Plaintiff's Countermotion for Summary Judgment, filed November 5, 1999 [Doc. No. 14], and Defendants' Motion to Stay Determination on Plaintiffs' and Defendants' Motions for Summary Judgment, filed April 26, 2000 [Doc. No. 22]. The Court, having considered the motions, responses, relevant law, and being otherwise fully advised, finds that Plaintiff's countermotion for summary judgment is well-taken and will be granted and that Defendants' motions are not well-taken and will be denied.

## **BACKGROUND**

This is an action brought by Millers Mutual Fire Insurance Company of Texas ("Millers") seeking declaratory judgment that it does not have a duty to defend or indemnify Defendants Southwest

Surveying Co., Inc. ("Southwest Surveying"), S/W Land Development Corporation[1] ("S/W Land"), and Frank E. Wilson (collectively "Southwest Defendants") in the underlying action brought by Buena Vista Land Development Corporation ("Buena Vista") against Southwest Defendants, Franklin's Earthmoving, Inc. ("Franklin's Earthmoving"), and Matias Armenta d/b/a/ Armenta Trucking Co., a/k/a Armenta Road Construction & Trucking ("Armenta Trucking"). Though Millers initially named Buena Vista as a defendant in this action, it has since voluntarily dismissed Buena Vista from the action without prejudice.

Because the determination whether Millers has a duty to defend the Southwest Defendants depends on the relevant insurance policy and the allegations in the underlying action, *see Lopez v. N.M. Public Schools Ins. Auth.*, 117 N.M. 207, 209 (1994), the Court must review both. For purposes of resolving these motions, following are the undisputed material facts.[2]

Millers issued commercial general liability ("CGL") insurance policies to the Southwest Defendants with an effective date of November 6, 1994 with subsequent renewals for all times materials to this action. The CGL policy which Millers issued to the Southwest Defendants is a standard CGL policy which covers "'bodily injury' or 'property damage'[which] is caused by an 'occurrence.'" *Commercial General Liability Coverage Form*, at § I(1)(b). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at § V(12). "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property. . . . or loss of use of tangible property that is not physically injured." *Id.* at § V(15). The CGL policy only applies if the complaint in the underlying action alleges both an

---

[1] S/W Land Development Corporation was misnamed as Southwest Land Development Corporation in the complaint.

[2] The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Mere assertions that a fact is or is not controverted are insufficient. *Id.*

"occurrence" and "property damage." The policy includes a "products-completed operations hazard" and provides that work is completed for purposes of this "products-completed operations hazard" when the work has been put to its intended use by any person or organization other than another contractor or subcontractor on the same project. *Id.* at § V(14).

On October 15, 1998, Buena Vista filed suit against the Southwest Defendants, Franklin's Earthmoving, and Armenta Trucking in the Second Judicial District, County of Bernalillo, Cause No. CV 98-09946. Buena Vista filed its First Amended Complaint on or about May 20, 1999. The Southwest Defendants tendered the First Amended Complaint in the underlying action to Millers with a demand that it defend and indemnify them. Millers timely accepted the demand and has been providing the Southwest Defendants a defense under a reservation of rights.

According to the complaint[3] in the primary action, Buena Vista is the owner and developer of portions of a residential development named Sandia Mountain Ranch located in Bernalillo County, New Mexico. In the underlying action, Buena Vista complains that Southwest Defendants and the other defendants failed to construct a roadway for which they were hired to construct in compliance with the applicable specifications. Buena Vista contracted with S/W Land to construct the base coarse and subgrades of the roads in Phase I of the Sandia Mountain Ranch project pursuant to the Construction Agreement. The Construction Agreement provided that S/W Land would construct the roadways in accordance with various specifications, including installing a six inch gravel base course. According to the complaint, S/W Land subcontracted the work under the Construction Agreement to Armenta Trucking, knowing that Armenta Trucking was neither qualified to complete the road construction work nor possessed the required contractor's license. Buena Vista contracted with Franklin's Earthmoving to install the asphalt paving according to construction specifications which required the placing of a two

---

[3]The "complaint" refers to the First Amended Complaint.

inch asphalt paving surface over the gravel base coarse. When Franklin's Earthmoving was contacted to complete the asphalt paving, it recognized that the subgrades were not properly shaped. S/W Land was contacted about the problem and had Armenta Trucking do additional work. Buena Vista alleges that rather than correcting the subgrade, Armenta Trucking moved the gravel from the edges of the road to the middle to form the required crown. The road was then paved, temporarily concealing the defects. Southwest Surveying was called on by Wilson to undertake the construction surveying.

Buena Vista complains that after the roadways were completed they began to fail and break apart. The complaint states:

> Upon inspection, it was determined that the subgrades of the roadways had not been properly graded, shaped or compacted; that the base coarse which was supposed to consist of six inches of gravel, instead consisted of as little as one-half inch of gravel; and that the asphalt which was supposed to be two inches thick, in some places was as thin as one quarter inch.

*First Amended Complaint* at ¶ 22. Because of these problems, Buena Vista asserts it was required by Bernalillo County to tear out and reconstruct the roadways. The work was declared completed prior to the occurrence of any of the damage claimed by Buena Vista. Moreover, the work began to fail after it was put to its intended use by Buena Vista.

Buena Vista has brought the following causes of action in the underlying action: breach of contract, intentional breach of contract, breach of the duty to disclose for defendants' failure to inform Buena Vista that the roadway had not been constructed in accordance with the construction specifications, misrepresentation against Wilson, violations of the Unfair Practices Act,[4] and negligence for failing to build the roads pursuant to applicable standards. The misrepresentation claim asserts that Wilson falsely represented himself as an expert with subdivision development, roadway construction, and construction surveying and failed to disclose that he would subcontract the road work to an unlicenced,

---

[4]The count for violations of the Unfair Practices Act has been dismissed.

4

unqualified contractor – Armenta Trucking. Buena Vista further alleges that the misrepresentations about the proper completion of the roadway work and the submission of invoices for work not done in compliance with the specifications were done with Wilson's knowledge and participation.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case.

5

*Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## DISCUSSION

A federal court sitting in a diversity action must apply the substantive law of the state in which it sits. *See Boyd Rosene and Assoc., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115 (10th Cir. 1999). If there is no ruling by the state's highest court, then the federal court must "apply what they find to be the state law after giving 'proper regard' to the relevant rulings of other courts of the state." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *see also Duke v. Grady Mun. Schools*, 127 F.3d 972, 978 (10th Cir. 1997). When state law is unclear, the federal court must predict how the state's highest court would resolve the issue. *See Armijo v. Ex. Cam., Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). In doing so, the federal court should consider "decisions of other states, and the general weight and trend of authority." *Id.* at 407. This Court is unaware of any New Mexico case law addressing several of the legal issues at issue in this case. However, decisions of other federal and state courts provide guidance in this area, and the Court looks to the applicable New Mexico law when available.

At issue in this case are both Millers' duty to defend the Southwest Defendants in the underlying action and Millers' duty to provide coverage. The Southwest Defendants move for partial summary judgment on the duty to defend, asserting that the Court cannot determine the duty to indemnify until the underlying action is resolved and the extent of Southwest Defendants' liability, if any, is determined. The duties to defend and provide coverage are distinct. *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 619 (1982) (citing cases). Under New Mexico law, an insurer has a duty to defend an insured from an action if the allegations in the underlying complaint state a claim potentially covered by the insurance policy. *Id.* at 619-20 ("if the allegations of the injured third party's complaint show that an

6

accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured") (quoting *American Employers' Ins. Co. v. Continental Cas. Co.*, 85 N.M. 346, 348 (1973)); *Valley Improvement Assoc., Inc. v. Ins. Co. of North America*, 129 F.3d 1108, 1115 (10th Cir. 1997); *Lopez*, 117 N.M. at 210 ("Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy"). Even if the allegations are not clear enough to determine whether the action is covered by the policy, if the alleged facts tend to show a covered occurrence, the insurer must defend the insured. *Mullenix*, 97 N.M. at 619 (quoting *American Employers' Ins. Co.*, 85 N.M. at 348). Moreover, if the injured third party has pleaded any grounds against the insured covered by the policy, the insurer must defend the insured, even if the action includes claims not covered by the policy. *Valley Improvement Assoc.*, 129 F.3d at 1116 (citing cases). Ambiguities must be resolved in favor of the insured. *Id.*

As explained previously, the CGL policy in this case only applies if the complaint in the underlying action alleges both an "occurrence" and "property damage."[5] Before analyzing whether these requirements are met in this case, the Court will review the basic purpose of CGL policies. CGL policies, such as the one at issue in the case at bar, are not intended to cover contractors for business risks, including claims that their work is defective, but rather to cover consequential damages. *See Maryland Cas. Co., v. Reeder*, 270 Cal. Rptr. 719 (Ct. App. 1990); Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 TORT & INS. L.J. 785, 786 (1995) (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 791 (N.J. 1979)). The Minnesota Supreme Court explained this as follows,

> The contractor . . . has a contractual business risk that he may be liable to the owner resulting from the failure to properly complete the building project itself in a manner so as to not cause damage to it. This risk is one the general contractor effectively controls

---

[5]All parties agree that there is no allegation of bodily injury.

7

and one which the insurer does not assume because it has no effective control over those
risks and cannot establish predictable and affordable insurance rates.

*Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 233-34 (Minn. 1986). Performance bonds are designed to provide coverage for the insured's defective work, but CGL policies are not. *Id.*

**A. "Property Damage"**

With this background framework, the Court turns to the particulars of this case. To determine whether Millers has a duty to defend the Southwest Defendants, the Court examines the CGL policy and the complaint in the underlying action, first assessing whether the complaint alleges "property damage" as defined by the CGL policy. The complaint in the primary action alleges the following damage:

> During the one year period following completion, the roadways began to fail. Upon inspection, it was determined that the subgrades of the roadways had not been properly graded, shaped or compacted; that the base coarse which was supposed to consist of six inches of gravel, instead consisted of as little as one-half inch of gravel; and that the asphalt which was supposed to be two inches thick, in some places was as thin as one quarter inch. As a result of the failure of the roadways, Plaintiff has been required by Bernalillo County to completely tear out and reconstruct the roadways and to rebuild the same with more gravel base coarse and more asphalt paving than was previously required.

*First Amended Complaint*, at ¶¶ 22, 23. The complaint also asserts that the "road began to fail and break apart." Id. at ¶ 18. "Property damage" is defined in the CGL policy as "physical injury to tangible property, including all resulting loss of use of that property. . .or loss of use of tangible property that is not physically injured."

In their summary judgment motion, the Southwest Defendants argue that the Court cannot find as a matter of law that the complaint in the primary action does not allege "property damage." They assert that the complaint alleges that the roadway failed, and that though the complaint does not specify how the roadway failed, "[i]t is hard to conceive how a roadway can fail without physical damage to the roadway itself." *Memorandum in Support of Partial Summary Judgment and Stay of Proceedings*, at

9. The Southwest Defendants argue that the complaint alleges that their work and their subcontractors' work defectively installing the base coarse caused damage to the asphalt installed by Franklin's Earthmoving on top of the base coarse. Accordingly, they aver that the complaint alleges property damage because their work is alleged to have harmed other property – another portion of the road.

Millers counters that the complaint in the underlying action does not allege "property damage," citing to cases which hold that loss of the economic value of property does not constitute property damage. *See, e.g., American Int'l Bank v. Fidelity & Deposit Co. of Md.*, 57 Cal.Rptr.2d, 567, 575 (Ct. App. 1996); *Hartford Accident & Indem. Co. v. Civic Mutual Life Ins. Co.*, 861 F.2d 250 (10th Cir. 1988). Millers places substantial reliance on *Hartford Accident* in which a subcontractor defectively installed a glass curtain wall system on a building under construction. Because of the defective installation, the wall system cracked and broke and other portions of the building also suffered physical damage. The building owner removed and replaced portions of the wall system, and brought an action against the subcontractor and others, seeking to recover the costs of replacing the system and other consequential damages. The Tenth Circuit, in a diversity action applying Oklahoma law, held that because the damages sought were essentially for diminution in value, they were not "property damage" covered by the 1973 CGL policy definition. *Hartford Accident*, 861 F.2d at 250.

The *Hartford Accident* court applied a stricter definition of "property damage" than other courts. Courts agree that under the CGL policies, property damages must be tangible in order to be covered. Therefore, strictly economic losses such as loss of profits, goodwill, aesthetic value, and damage to business reputation do not constitute property damage covered by CGL policies. *See Hartford Cas. Co. v. Cruse*, 938 F.2d 601**,** 604 (5th Cir. 1991); *W.E. O'Neil Constr. Co. v. National Union Fire Ins. Co.*, 721 F. Supp. 984, 994 (N.D. Ill. 1989); *Dreis & Krump Mfg. Co. v. Phoenix Ins. Co.*, 548 F.2d 681 (7th Cir. 1977). However, unlike in *Hartford Accident* where the court apparently held there was no

9

property damage even when the defendant subcontractor's defective work caused physical damage to other portions of the building, many courts have held to the contrary. For example, the Southwest Defendants rely on a California case, *Reeder*, 270 Cal. Rptr. 719, for the proposition that while defective construction itself may not constitute "property damage," if the defective construction causes physical damage to other property, that falls within the definition of "property damage."

In *Reeder*, the walls and foundation of a condominium complex cracked because of soil subsidence caused by defective site preparation. The court held that the derivative damage caused by the insured's defective work was covered property damage. *Reeder* and other cases thus establish the principle that though defective work itself is not covered by CGL policies, physical damage to other work caused by defective work is. *See, e.g., Hartford Cas.*, 938 F.2d at 603 ("a contractor cannot recover from the insurer for 'his own failure to perform his contract' but can recover for damage other than to his own work") (quoting *Eulich v. Home Indemnity Co.*, 503 S.W.2d 846, 849 (Tex.Civ.App. 1973); *W.E. O'Neil Constr. Co.*, 721 F.Supp. at 991; *see also* Franco, *infra*, 30 TORT & INS. L.J. at 790 ("while poor workmanship is not covered, damages from poor workmanship are covered").

The Southwest Defendants argue that this principle applies in this case because the complaint alleges that the defective base coarse caused physical damage to other property – the asphalt applied by Franklin's Earthmoving on top of the base coarse. The Court agrees with this argument and finds the line of cases holding that damage to other property from defective work is "property damage" under the CGL policies persuasive. The complaint states that the roadway "began to fail and break apart" and that it had not been built according to the relevant specifications. In particular, the complaint alleges that the base coarse was not properly shaped or graded and was not as thick as was required, and, similarly that the asphalt was not as thick as mandated. Accordingly, the County required Buena Vista to tear up and reconstruct the roadway. Remembering that the Court must resolve ambiguities in favor of the insured,

10

*Valley Improvement Assoc.*, 129 F.3d at 1116, and find a duty to defend if the complaint arguably states a claim against the insured covered by the policy, *Mullenix*, 97 N.M. at 619, the Court concludes that the complaint in this case does allege "property damage" within the meaning of the CGL policy. The complaint states that the road broke apart. This must mean that the asphalt layer installed by Franklin's Earthmoving was damaged. This damage to property outside the Southwest Defendants' work is sufficient to satisfy the "property damage" requirement.

**B. "Occurrence"**

Having found that the necessary element of "property damage" has been satisfied, the Court turns to whether the complaint alleges an "occurrence" under the CGL policy. "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." This definition is designed to limit coverage to fortuitous acts. *See Indiana Farmers Mut. Ins. Co. v. Graham*, 537 N.E.2d 510, 511-12 (Ind.Ct.App. 1989). In this case, Millers argues that the complaint in the underlying action does not allege an "occurrence" because the claims arise out of alleged faulty construction, failure to comply with construction standards, breach of contract, and non-disclosure, none of which, according to Millers are an "occurrence" because none of these acts involve an accidental event.

Buena Vista asserts two contract claims against the Southwest Defendants – breach of contract and intentional breach, for failing to build the road according to the applicable building standards. Millers argues that these claims do not allege an "occurrence" because they are based on intentional conduct, asserting that a majority of courts have held that improper or faulty construction does not constitute an "occurrence" under standard CGL policies such as the one at issue here. The Court agrees that the factual allegations underlying the contract-related claims are not based on "accidental conduct." The complaint alleges that the Southwest Defendants and Armenta Trucking knew of the construction

11

specifications, but nonetheless Armenta Trucking failed to build the base coarse in compliance with these requirements. According to the complaint in the underlying action, S/W Land was notified of the problem, and Armenta Trucking failed to remedy the problem. The complaint explicitly charges that the Southwest Defendants' actions in breaching the contract were intentional. Given these allegations, the Court cannot find that the contract claims allege accidental conduct as required for an "occurrence."

The Court's holding regarding the contract claims is consistent with the weight of authority holding that faulty construction and the consequences of such construction are not an "occurrence" as defined by the standard CGL policies. *See J.Z.G. Resources, Inc. v. King*, 987 F.2d 98, 102, 103 (2nd Cir. 1993); *R.N. Thompson & Associates, Inc. v. Monroe Guaranty Ins. Co.*, 686 N.E.2d 160, 165 (Ind.App. 1997); *USF&G v. Advance Roofing & Supply Co., Inc.*, 788 P.2d 1227, 1233 (Az.App. 1990). Courts have also held that if the harm alleged is the natural result of the voluntary and intentional acts of the insured, the harm cannot be said to be "caused by an accident" even if it was unforseen. *See New Hampshire Ball Bearings v. Aetna Casualty & Sur. Co.,* 43 F.3d 749 (1st Cir. 1995); *St. Paul Fire & Marine Ins. Co. v. Superior Court*, 208 Cal. Rptr. 5 (Ct. App. 1984). This definition of "accident" is in keeping with the New Mexico Supreme Court's holding that the definition of accidental "does not include the result of willful design." *Vihstadt v. Travelers Ins. Co.*, 103 N.M. 465, 466 (quoting *King v. Travelers Ins. Co.*, 84 N.M. 550, 553 (1973)). That a roadway would fail and the County would require that it be rebuilt is a natural result of constructing the base coarse with as little as one-twelfth of the material required – an act which the complaint alleges was done willfully. Accordingly, the Court finds that the contract claims do not allege an "occurrence."

The Court turns now to the allegations underlying the tort claims, keeping in mind that it must assess the factual allegations rather than the legal theories asserted in determining whether the insurer has a duty to defend or provide coverage. *See, e.g. Lopez*, 117 N.M. at 209. Millers argues that the non-

contract claims arise out of intentional acts, including failing to comply with standards, faulty construction, and nondisclosure which do not constitute an "occurrence." As to the breach of the duty to disclose, the Court agrees that this does not allege an "occurrence." The factual allegations in this claim complain that Southwest Surveying knew of the construction specifications, knew that the roadway had not been built in compliance with these specifications, but failed to so inform Buena Vista. The complaint further alleges that S/W Land and Wilson knew that Armenta Trucking was not a qualified contractor and had not built the subgrade according to the specifications, but failed to advise Buena Vista of these facts. Again these allegations involve intentional acts which cannot be seen as accidental and therefore do not constitute an "occurrence."

Count Four of the First Amended Complaint alleges acts of misrepresentation which the Southwest Defendants concede are not an "occurrence." Count Five in the First Amended Complaint has been dismissed. The Southwest Defendants assert that Count Six for negligence is clearly an "occurrence" because it alleges property damage that was the result of unintentional acts. However, the Court does not blindly accept that a negligence claim must be based on factual allegations constituting an "occurrence," but rather examines the facts themselves. In *Mt. Carmel v. National Ben Franklin Insurance Co.*, 643 N.E.2d 1280 (Ill. App. 1994), for example, the court held that in assessing whether a negligence claim alleged an "occurrence," the court should "determine if the allegations of negligence contained therein are based on separate negligent acts, or are just merely intentional acts which have been labeled as negligent." *Id.* at 1289 (citing cases). In that case, the court found that the complaint did not allege factual allegations suggesting negligence but rather based the negligence claim on the intentional acts underlying the other claims. Therefore, the court found there was no "occurrence" alleged. Similarly, the Fifth Circuit has refused to assume that because a complaint contained a negligence claim, it alleged an occurrence, looking instead to the factual allegations themselves. *See*

*Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 87 (5th Cir. 1997). Applying this rule, the Court finds that though the underlying complaint includes a claim for negligence, there are no factual allegations suggesting anything but intentional acts. The Court finds that the First Amended Complaint in the underlying action does not allege an "occurrence" within the meaning of the CGI policy. Accordingly, Millers has no duty to defend or indemnify the Southwest Defendants from the First Amended Complaint.

**C. Motion to Stay Pending Decision on Second Amended Complaint**

This does not end the Court's inquiry because Buena Vista seeks to amend the First Amended Complaint. Its Second Amended Complaint makes two significant changes. First, now that its Unfair Practices Act claim has been dismissed, Buena Vista seeks to add a new Count Four for intentional, negligent or innocent misrepresentation or omissions of material fact and/or constructive discharge. The other relevant change is that Buena Vista added new factual allegations that "S/W Land knew or should have known that Armenta Trucking was not qualified to build the subgrade and would not build it in accordance with acceptable road building standards in New Mexico." *Second Amended Complaint*, at ¶ 13. In the First Amended Complaint, by contrast, Buena Vista alleged that S/W Land knew that Armenta Trucking was not qualified to do road construction work. Essentially then, Buena Vista seeks to amend its complaint to charge S/W Land with negligently failing to investigate Armenta Trucking's qualifications.

The Southwest Defendants seek to stay the case until the state court presiding over the underlying action decides whether Buena Vista will be permitted to amend its complaint. The Court need only consider this motion and the possible changes to the complaint if it finds that the Second Amended Complaint, unlike the First Amended Complaint, alleges an "occurrence." The Court finds that it does. The Second Amended Complaint includes a claim for negligent misrepresentation and

factual allegations that S/W Land should have known that Armenta Trucking would not build the subgrade according to the specifications. Millers point to cases from other jurisdictions holding that negligent misrepresentation does not constitute an "occurrence." However, the Southwest Defendants convincingly argue that the case law is not binding in New Mexico where, unlike some other jurisdictions, negligent misrepresentation does not require an intent to induce reliance. *See Vigil v. Rio Grande Ins. of Santa Fe*, 124 N.M. 324, 331 (Ct. App. 1997).

Even if Buena Vista is permitted to amend the complaint in the primary action to include these allegations which constitute an occurrence, however, the Court finds that one of the policy exclusions applies to preclude coverage. The Southwest Defendants' CGL policy with Millers provides that it does not apply to:

> 'Property damage' to 'impaired property' or property that has not been physically injured arising out of:
>
> > (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or
> >
> > (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

*Commercial General Liability Coverage Form*, at § I(2)(m). This exclusion for damage to impaired property or property not physically injured applies in the present case where it is alleged that because of the defective work constructing the roadway it began to "fail and break apart." The Southwest Defendants argue that the exclusion should not apply because "the Complaint does not indicate whether the failure of the roadway included physical damage to the roadway or not." *Memorandum in Support of Partial Summary Judgment and Stay of Proceedings*, at 15. This is hardly persuasive given that the complaint states that the roadway broke apart and given that this assertion directly contradicts that

15

section of the Southwest Defendants' brief arguing that the complaint alleges "property damage." The Southwest Defendants also argue that the exclusion should not apply because the allegedly defective work was not completed by them but rather by Franklin's Earthmoving. However, "your work" is defined by the policy as "work or operations performed by you or on your behalf" and is defined to include "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" *Id.* at § V(19). For the foregoing reasons, the Court concludes that this exclusion applies, preluding coverage under the CGL policy. Therefore, even if Buena Vista amends its complaint, the Southwest Defendants will not be entitled to a defense or coverage by Millers under the CGL policy.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment or Partial Summary Judgment and Stay of Proceedings **[Doc. No. 12]** is hereby **denied**; Plaintiff's Countermotion for Summary Judgment **[Doc. No. 14]** is hereby **granted** and Defendants' Motion to Stay Determination on Plaintiffs' and Defendants' Motions for Summary Judgment **[Doc. No. 22]** is hereby **denied**.

**DATED** this 19th day of May, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiff:
Scott P. Hatcher

Attorney for Defendants:
Carl Calvert